Honorable Gordon M. Ambach Commissioner NYS Department of Education
Your counsel has asked whether Boards of Cooperative Educational Services (BOCES) are prohibited by section 495 of the Judiciary Law from rendering legal services to their component school districts.
Section 495 of the Judiciary Law, with certain exceptions, prohibits corporations or voluntary associations from practicing law (id., § 495[1]). The purposes of section 495 are to prevent the commercialization of the practice of law and to retain judicial supervision over the legal profession and the public obligations of lawyers (Matter of Feinstein,36 N.Y.2d 199, 204 [1975]).
BOCES are corporations established by order of the Commissioner of Education for the purpose of carrying out a program of shared educational services for the component school districts of one or more supervisory districts (Education Law, § 1950[1] and [6]). BOCES educational programs are provided in accordance with a budget that is funded by State aid and charges against its component school districts (id., § 1950[4][b]). At the request of its component school districts and with the approval of the Commissioner of Education, a BOCES has the duty to provide any one of a number of services on a cooperative basis (id.,
§ 1950[4][d]). These services include:
 "school nurse teacher, attendance supervisor, supervisor of teachers, dental hygienist, psychologist, teachers of art, music, physical education, vocational subjects, guidance counsellors, operation of special classes for handicapped children, as such term is defined in article eighty-nine of this chapter; pupil and financial accounting service by means of mechanical equipment; maintenance and operation of cafeteria or restaurant service for the use of pupils and teachers while at school, and such other services as the commissioner of education may approve." (Ibid.)
In his letter your counsel informed us that the Education Department has concluded that section 1950 of the Education Law authorizes a BOCES to offer legal services to its component districts, with the prior approval of the Commissioner, and that such approval will be granted in appropriate cases if the services are not prohibited by section 495
of the Judiciary Law.
The provision of legal services by a BOCES to its component school districts is closely analogous to the provision of legal services by a municipal attorney to the agencies and departments of government. In both instances, the provision of legal services is publicly funded, fulfills a public purpose and is to represent exclusively the interests of the BOCES and municipal corporation, respectively. Thus, it is questionable whether section 495 was intended to restrict the practice of law in this context. A primary purpose of section 495 is to prevent the commercialization of the practice of law (Matter of Feinstein, supra). BOCES are corporations which by statute provide educational services to school districts in accordance with a budget funded by State and school district funds. The provision of legal services in this context offers little potential for the commercialization of the practice of law.
In any event, we believe that subdivision 7 of section 495 would permit BOCES to offer legal services to its component districts, subject to the requirements of section 496 of the Judiciary Law. Subdivision 7 of section 495 provides that the section does not apply "to non-profit organizations whether incorporated or unincorporated, organized and operating primarily for a purpose other than the provision of legal services and which furnish legal services as an incidental activity in furtherance of their primary purpose". The subdivision was added by chapter 706 of the Laws of 1979, which resulted from a proposal of the Law Revision Commission (Memorandum of the Law Revision Commission regarding Assembly 3662, which became L 1979, ch 706, 1979 Legislative Document Number 65[B] [hereafter "Commission Report"]). Prior to 1979 an exception was provided for:
 "organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy, whose existance, [sic] organization or incorporation may be approved by the appellate division of the supreme court of the department in which the principal office of such corporation or voluntary association may be located."
In Matter of Thom, 33 N.Y.2d 609 (1973), the Court of Appeals decided that the Lambda Corporation, which was organized to promote through the legal process the protection of the legal rights of homosexuals, is a benevolent or charitable organization under former subdivision 5 of section 495 of the Judiciary Law. The Commission Report notes that the United States Supreme Court, on constitutional grounds, has held that labor unions and political action groups have a right to provide legal services for members (United Transportation Union v State Bar ofMichigan, 401 U.S. 576 [1971]; Mine Workers v Illinois Bar Assn.,389 U.S. 217 [1967]; Brotherhood of Railroad Trainmen v Virginia,377 U.S. 1 [1964]; NAACP v Button, 371 U.S. 415 [1963] — cited in Commission Report). At issue in these cases is the basic right to group legal action (United Transportation Union v State Bar of Michigan,supra, at 585). The common thread running through these decisions "is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment" (ibid.). The Commission states that:
 "these cases can easily be construed to mean that absent some compelling state interest no restrictions may be placed on the furnishing of legal services by organizations in aid of their objectives except that the lawyers can be supervised just as if they were practicing individually." (Commission Report.)
The Commission thought that various consumer groups and homeowners' associations would have the right under these decisions to provide legal services to their members or in furtherance of their goals (ibid.).
In response to these court decisions establishing a broad right of organizations to provide legal services, the Commission proposed repeal of the restrictive language in former subdivision 5 and the addition of a new subdivision 7 (ibid.). The Commission expressed its view on the impact of the proposed addition, which is current subdivision 7. "Under this wide open provision virtually any group may provide legal services" (ibid.).
It is with the above history in mind, that the language establishing the exception for non-profit organizations must be construed. Clearly, the exception was drafted so that organizations given the right to practice law by court interpretation of previous statutory language would be covered under the new provision. These organizations include the Lambda Corporation and the Puerto Rican Legal Defense Fund (Matter of Thom,supra). The exception was also intended to apply broadly to any non-profit organization formed to represent a particular group or a special interest, not solely the more narrowly defined groups described in former subdivision 5 of section 495. In this respect, the Law Revision Commission was cognizant of other cases in which labor unions were found to have the right to provide legal services to members (UnitedTransportation Union v State Bar of Michigan, supra; Mine Workers vIllinois Bar Assn., supra; Brotherhood of Railroad Trainmen v Virginia,supra). These organizations were providing legal services or assistance to members of a particular group or in representing a special interest. To bring these various organizations within the conjunctive language of subdivision 7, their primary purpose must be viewed as advancing the interests, for example, of labor union members or Puerto Ricans and that the legal services provided in furtherance of these groups' interests is the incidental legal activity. Any other reading would seem to negate not only the purpose of subdivision 7 but would actually make its coverage narrower than its predecessor subdivision. Therefore, we believe that the requirement in subdivision 7, that legal services be provided only as an incidental activity in furtherance of the organization's primary purpose, is satisfied when an organization formed to represent a particular group or special interest, practices law in promoting these groups or interests.
BOCES perform education-related services for school districts (Education Law, § 1950[4][d]). We believe that the provision of legal services by a BOCES to its component school districts is within the scope of subdivision 7 of section 495. The BOCES, as an organization formed primarily to provide education-related services to its component districts, would be providing legal services to the districts to promote their education function. Under subdivision 7, BOCES are excepted from the coverage of section 495. Any organization described in subdivision 7 of section 495 must file certain information with the Appellate Division Department in which its principal office is located (Judiciary Law, § 496).
We conclude that Boards of Cooperative Educational Services are not prohibited by section 495 of the Judiciary Law from rendering legal services to their component school districts.